J-S12024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SHIRLEY J. KEAHEY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| EDWARD NELSON, MARY LOU NELSON AND ERIC S. WARD, LINDA N. WARD, | |
| Appellees | No. 1584 EDA 2015 |

Appeal from the Order Entered May 1, 2015
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2013-08089-RC

BEFORE:  MUNDY, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED MARCH 22, 2016**

Appellant, Shirley J. Keahey, appeals from the order entered on May 1, 2015, granting a motion for summary judgment filed by Appellees, Edward Nelson, Mary Lou Nelson, Eric S. Ward, and Linda N. Ward (hereinafter collectively referred to as Defendants).  We affirm.

The trial court summarized the facts of this case as follows:

> In or about 1962[,] Edwin and Ann Hixon ([the Hixons)] subdivided certain land in London Britain Township.  The Hixons retained two lots, identified as Tax Parcel 73-3-6 and 73-3-6.6, which are referenced hereinafter as Parcel A and Parcel B, respectively.  Parcel A is the larger of the lots and is a flag [shaped] lot, with the pole portion of the lot giving access to North Creek Road.  Parcel B lies to the east of Parcel A and also fronts North Creek Road.
>
> On October 3, 1962, [Appellant] and her then husband purchased a landlocked lot from the Hixons, Tax Parcel 73-1-1, with "the right of ingress and egress over a certain thirty (30) foot wide right-of-way []."  [Appellant's] lot

*Retired Senior Judge assigned to the Superior Court.

borders and lies north of Lot A. The right-of-way deeded to [Appellant] begins on Parcel B at North Creek Road, runs through the pole portion of Parcel A and then along the western boundary of Parcel A.

Shortly after acquiring her lot, [Appellant] installed a driveway across the Hixons' parcels, laying out a portion of the roadway within the deeded easement and a portion outside of the deeded easement. The total length of the deeded easement is approximately 1,050 feet. The installed driveway is approximately 1,056 feet and, of this, approximately 475 feet lie within the deeded easement.

The Hixons owned Parcel A and Parcel B until their deaths, at which time ownership was transferred to their daughter Anne LaPorte. The deed to Ms. LaPorte is dated May 27, 1988. Ms. LaPorte never resided at the properties and she and her husband sold both properties to Defendants Eric and Linda Ward on July 16, 2001. For reasons that were not explained, the Wards transferred Parcel B to Edward and Mary Lou Nelson, Ms. Ward's parents, on January 13, 2009. Thereafter, on February 20, 2009, the Wards transferred Parcel A to the Nelsons. At some point prior to July 16, 2012, the Nelsons transferred Parcel A back to the Wards. The Wards live at the property.

On December 13, 2010[, Appellant] brought an action at No. 2010-14877 to enjoin Defendants, in particular, the Wards, from blocking her driveway and to compel Defendants to share in the cost of maintaining her driveway. Thereafter, [Appellant] was permitted to file an [a]mended [c]omplaint and did so on April 17, 2012, adding a count to quiet title through adverse possession. [The trial court] found the Wards to be in possession of the disputed land and directed [Appellant] to pursue ejectment if she wished to pursue her claim to the property.

[Appellant] commenced this action in ejectment on August 16, 2013, claiming by adverse possession the land over which her driveway traverses as well as the ground alongside the driveway. This swath of land encompasses all of [Parcel] A's frontage on North Creek Road, plus approximately 112 feet of [Parcel] B's frontage, and runs along the length of [Parcel] A's western boundary, ending at

[Appellant's] property line. At its widest at North Creek Road, the land claimed by [Appellant] is 162 feet wide and then narrows at one point to 50 feet before opening up to 60 feet along the approach to [Appellant's] lot.

[Appellant] assert[ed] that she had established ownership by adverse possession by 1983, or twenty-one years after she first entered the disputed property.

\*      \*      \*

[Following an evidentiary hearing, the trial court, however,] held that [Appellant] had not established title to the disputed land.

\*      \*      \*

[In its subsequent opinion, the trial court noted that there is a procedural] difficulty in this case. [As previously stated, Appellant] had earlier, on December 13, 2010, commenced an action against these Defendants under docket number 2010-14877. That action was brought as a [c]omplaint for [i]njunctive [r]elief; [Appellant] sought to enjoin Defendants from blocking access to the disputed driveway. On April 17, 2012, [Appellant] filed an [a]mended [c]omplaint adding a count to quiet title through adverse possession. The case was assigned to Judge Howard F. Riley, Jr., who conducted a trial on July 16, 2012. Shortly before his retirement at the end of 2012, Judge Riley issued an order directing the parties to "review and revise their pleadings and proceed with the dictates of *Siskos v. Britz*, 790 A.2d 1000 (Pa. 2002)." The case was reassigned to [Judge Edward Griffith].

[Judge Griffith] listed the case for a hearing on May 9, 2013 to determine possession of the disputed property at the time the [c]omplaint was filed as it was not clear that the proceeding before Judge Riley had explored that issue. *Siskos* dictates that "where there is a dispute regarding possession, the trial court cannot proceed to the merits of the action without first determining whether the plaintiff is in possession." *Siskos*, 790 A.2d at [] 1007. Counsel subsequently agreed that [Judge Griffith] should decide

possession based upon the transcript of the July 18, 2012 [proceeding] before Judge Riley.

Thereafter, on July 17, 2013, [Judge Griffith] entered an order finding that Defendants Eric S. and Linda N. Ward were in possession of the property at the time the action was commenced and directing [Appellant] to "file an [a]ction in [e]jectment within thirty days of the day of [the] [o]rder under [docket number 2010-14877]." [*Sutton v. Miller*, 592 A.2d 83, 89 (Pa. Super. 1991), instructs that when plaintiffs bring an action to quiet title and are determined to be out of possession of the disputed property, the proper course of action is to dismiss the claim to quiet title with leave to amend to bring a claim in ejectment.] Despite that direction, [Appellant] commenced an action in ejectment under a separate docket, the within case, No. 2013-08089. [Appellant] now contests the determination reached under [docket number 2010-14877], that the Wards had actual possession of the disputed property, in this appeal. [Appellant] also contests [the trial court's] determination, under [docket number 2010-14877], that she was required to file an action in ejectment. Having failed to timely appeal the July 17, 2013 [o]rder, entered in [docket number 2010-14877], [the trial court] respectfully submit[s] that [Appellant] has not preserved these issues for appeal.

Trial Court Opinion, 6/30/2015, at 3-7 (record citations omitted) (footnote incorporated). On May 1, 2015, the trial court granted Defendants' motion for summary judgment. This timely appeal resulted.[1]

On appeal, Appellant presents the following issues for our review:

_____

[1] Appellant filed a notice of appeal on May 20, 2015. On June 8, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on June 26, 2015. On June 30, 2015, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a), largely relying upon a lengthy footnote set forth in an order dated October 6, 2014 that denied Appellant's motion for summary judgment.

- 4 -

1. Whether the trial court erred in granting [D]efendants' motion for summary judgment?

2. Whether the trial court erred in finding that [Appellant's] use of the disputed property was permissive.

3. Whether the trial court erred in finding that [Appellant] failed to clearly delineate the boundaries of the land she claims.

4. Whether the trial court erred in failing to find that [Appellant] was in actual possession of the disputed property at the time her complaint was filed.

5. Whether the trial court erred in denying [Appellant's] motion for summary judgment.

Appellant's Brief at 4 (superfluous capitalization omitted).

We begin with our standard of review:

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render

a verdict in favor of the non-moving party, then summary judgment should be denied.

**Majorsky v. Douglas**, 58 A.3d 1250, 1257 (Pa. Super. 2012).

Initially, we note that Appellant has waived her fourth issue as presented, because, as recited above, Appellant failed to challenge the trial court's July 17, 2012 order determining the current possession of the disputed property. "Because the timeliness of an appeal implicates our jurisdiction, we cannot address the merits of an appeal or cross-appeal before determining whether it was timely." **Krankowski v. O'Neil**, 928 A.2d 284, 285 (Pa. Super. 2007)(citation omitted). Notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). Here, Appellant filed a notice of appeal on May 20, 2015, appealing "from the [o]rder entered in this matter on the 1st day of May, 2015." Notice of Appeal, 5/20/2015, at 1. In her appellate brief, Appellant concedes that her appeal lies from the trial court's order granting the Defendants' motion for summary judgment. Appellant's Brief at 6.

Appellant, however, did not file a timely notice of appeal to the July 17, 2012 order determining possession of the disputed property and we are constrained to find Appellant's fourth issue as presented waived.[2] The trial

---

[2] We note that Appellant does not challenge the trial court's determination to proceed under **Siskos v. Britz**, 790 A.2d 1000 (Pa. 2002) and **Sutton v. Miller**, 592 A.2d 83, 89 (Pa. Super. 1991). She does not address the fact that she proceeded under two different docket numbers and failed to file a notice of appeal following the trial court's possession decision; instead, she
*(Footnote Continued Next Page)*

court action was intended to resolve the question of possession of the disputed property since the Defendants' ownership (i.e., 1988 – present). The trial court ruled in the Defendants' favor and Appellant did not appeal, and, therefore, the trial court's ruling that Defendants were in possession of the disputed land stands. In turn, as discussed below, "[a]ctual possession is necessary to a finding of adverse possession[.]" ***Recreation Land Corp. v. Hartzfeld***, 947 A.2d 771, 775, (Pa. Super. 2008). The trial court's determination that Defendants are in actual possession of the disputed land defeats Appellant's claim of adverse possession from 1988 until the present. Accordingly, we confine our review of Appellant's adverse possession claim to the period corresponding to the Hixons' ownership of the land from 1962 until 1988.

We will address all of Appellant's issues together because they are inter-related. Appellant contends that she has set forth a *prima facie* case for adverse possession, that there are no genuine issues of material fact, and it is clear that she was entitled to a judgment as a matter of law. She contends that she has proven actual, continuous, exclusive, visible, notorious, and hostile possession of the disputed property for over 21 years as required to prove her adverse possession claim. Appellant's Brief at 13-15. With regard to the Hixons, Appellant avers

*(Footnote Continued)* ─────────────

argues the merits of the issue despite her failure to preserve it for appellate review.

[she] purchased [her] property on October 3, 1962 from Defendants' predecessor in title, Edwin and Anne Hixon. The conveyance included the right of ingress and egress over a 30 foot wide right-of-way described in the deed. At the time [Appellant] purchased her property from the Hixons, no driveway existed to connect her property with North Creek Road.

In 1962, at her own expense, [Appellant] constructed a driveway in its current location. The location of the driveway deviates significantly from the easement granted in [Appellant's] deed from the Hixons. Specifically, the driveway leaves the right-of-way area approximately two-thirds of the way from the road to [Appellant's] property and continues entirely separate from the right-of-way for approximately one-third of its length.

\* \* \*

[Appellant] did not ask the permission of the Hixons to locate the driveway in that location. The Hixons never used the driveway or the adjacent area. Beginning in 1962 [Appellant] began to landscape and maintain the area adjacent to, and on either side of, the gravel driveway which she had constructed. [Appellant] planted trees, flowers and shrubbery, weeded and cleaned out dead growth and fallen trees, and continuously fertilized and watered the area. She fenced new seedlings to protect them from deer, landscaped the surrounding area to prevent mud from flowing onto the driveway, and continued to maintain, repair and beautify the area adjacent to the driveway from 1962 to the present.

*Id.* at 7-8 (record citations omitted). She claims that the trial court erred in determining that Appellant's use of the disputed property was permissive rather than hostile, because she did not ask permission to erect the driveway outside the established easement or to landscape and maintain the area on either side. *Id.* at 17. She further argues that the trial court erred

in finding that she did not clearly delineate the boundaries of the land to which she laid claim, because she was able to identify it specifically in a plot plan. *Id.* at 21.

This Court recently stated:

> Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law. Accordingly, the grant of this extraordinary privilege should be based upon clear evidence. One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. Each of these elements must exist; otherwise, the possession will not confer title.

*Pennsylvania Services Corp. v. Texas Eastern Transmission, LP*, 98 A.3d 624, 634 (Pa. Super. 2014) (internal citations, quotations and brackets omitted). "[O]ur [S]upreme [C]ourt has stated that hostility may be implied where all of the remaining elements of adverse possession have been established **and** where there is no evidence tending to prove or disprove hostility." *Flannery v. Stump*, 786 A.2d 255, 258 (Pa. Super. 2001) (emphasis added), *citing* *Myers v. Beam*, 713 A.2d 61, 62 (Pa. 1998).

Moreover, our Supreme Court has concluded:

> [T]he adverse claimant must use the land exclusively for himself.... An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his act.... He must keep his flag flying and present a hostile front to all adverse pretensions. Broadly speaking, actual possession of land is dominion over the land; it is not equivalent to occupancy.

> **Where the possession, at its inception, is permissive, … [adverse possession] will not begin to run against the real owner until there has been some subsequent action of disseizing[3] or open disavowal of the true owner's title[.]**

*Flannery*, 786 A.2d at 259–260 (citations omitted) (emphasis added).

Here, the trial court determined,

> [Appellant] cannot prove ownership of the disputed land by the mere passage of time because [her] occupation began as a permissive use. [Appellant] has not identified an act of disseisin or open disavowal of the Hixons' title, or the title of any subsequent owner of the disputed land, and [the trial c]ourt could not locate any in the submitted record.

Trial Court Opinion, 6/30/2015, at 2.

The trial court further stated:

> [Appellant] never addresses the fact that she first entered the disputed land by permission of the Hixons. While [Appellant] may not have occupied precisely the easement deeded to her, she was nonetheless on the Hixons' property with permission and she is attempting to gain ownership of 475 feet [of property] lying within the deeded easement. [Appellant] has demonstrated neither an act of disseisin nor an open disavowal [of] the titled owner's title.

*Id.* at 6.

Finally, the trial court noted:

> Further undermining [Appellant's] claim is her inability to clearly delineate the boundaries of the land she claims. [She] acknowledged that she "arbitrarily" chose to leave Defendants with ten acres, "to be a little bit fair." When

_____

3 "Disseizin" or "disseisin" is defined as "[t]he act of wrongfully depriving someone of the freehold possession of property; DISPOSSESSION." BLACK'S LAW DICTIONARY 506 (8th ed. 2004).

- 10 -

asked specifically about the boundary line along the North Creek Road frontage, [Appellant] acknowledged that "there was not much to maintain out there" and she could not definitively state where the line should be placed.

*Id.* (record citations and original brackets omitted).

We agree with the trial court's assessment. Certainly, the property contained within the deeded easement is not subject to adverse possession because Appellant had permission to use that parcel. Moreover, we reject Appellant's claim pertaining to the property outside of the easement and arising from her careless installation of the driveway, as well as the land on either side of the driveway to which Appellant claims to have maintained. As the trial court determined, the record confirms that Appellant's possession of the disputed land commenced in a permissive manner and there was never any act amounting to an open disavowal of the Hixons' title or constituting overt disseisin of their ownership interest. We find support for this conclusion in our Court's decision in *Flannery*, *supra*.

In *Flannery*,

> a dispute [arose] between adjacent landowners over a parcel of land situated in Penn Township, Berks County. Sometime in 1963, Stump leased and farmed land then owned by Kathryn Kline. In addition to the land leased to him, Stump made use of a rectangular piece of property adjacent to Kline's. In December 1979, Stump purchased Kline's property. In addition to the land that he purchased from Kline, Stump continued to farm a portion of the adjacent land. Sometime in 1986, Flannery purchased property adjoining Stump's. Included within Flannery's property is the rectangular parcel of land then being farmed by Stump. In August 1996, Flannery filed an action in declaratory judgment seeking a court order declaring him the legal owner of the disputed parcel and ejecting Stump

- 11 -

from the same. Stump filed an answer and counterclaim asserting his right to the property under the doctrine of adverse possession. After pursuing discovery, which included the taking of the depositions of both parties, Flannery filed a motion for summary judgment, which the trial court denied. The parties entered into a stipulation of facts and, thereafter, Flannery filed a motion for reconsideration of summary judgment. Stump filed a responsive brief and a cross-motion seeking summary judgment on the basis that he had legal title to the land by adverse possession. The trial court dismissed Flannery's motion and entered an order granting summary judgment in Stump's favor. Flannery then filed [an] appeal.

*Flannery*, 786 A.2d at 257.

The *Flannery* Court determined "[t]he evidence showed that Stump considered the disputed parcel to be part of the land that he farmed with permission as a tenant farmer" and, subsequently, that "Stump believed himself to be the legal title owner of the disputed parcel after he made the purchase from Kline in 1979." *Id.* at 260. We ultimately concluded:

> [I]t is fair and reasonable to assume that one who buys land will be careful to insist that the deed description include all of the land which he believes to be purchasing. When Stump purchased the land from Kline, he was charged with knowledge of the metes and bounds of the land he purchased. When he proceeded, nevertheless, to use the land of another, he cannot be heard to say that he did not know the dimensions of the tract which he purchased.
>
> Even if we were to accept the claim that he used the parcel under the mistaken belief that it was part of his land, **Stump's act in exceeding the boundaries of his purchase could only be seen as a permissive encroachment used at the sufferance of the true owner**.

*Id.* (emphasis added; citation omitted).

- 12 -

While **Flannery** dealt solely with the purchase of property and the case *sub judice* involved a deeded easement, the legal precept is the same. Here, there is no dispute that the Hixons granted Appellant an easement with clearly delineated metes and bounds. Although Appellant proceeded to use additional land for the installation of a driveway and then allegedly maintained the land on either side, she cannot now claim she did not know the true dimensions of the easement. Even if Appellant mistakenly used the land as her own, it was a permissive encroachment upon land owned by the Hixons. Thus, there was no evidence of the element of hostility, and we need not imply it, as required to support a *prima facie* case of adverse possession arising in the period from 1962 until 1988. Accordingly, the entry of summary judgment in the Defendants' favor and the denial of Appellant's motion for summary judgment were proper. Finally, because we conclude that the trial court properly determined Appellant's claim failed as a matter of law, we need not address Appellant's additional contention that the trial court erred in granting summary judgment for Defendants because she could not clearly delineate the boundaries of the property she claimed.

Order affirmed.

Strassburger, J. joins this memorandum.

Mundy, J. concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/22/2016